IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORFORCE, LLC, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | No. 20 C 1220 |
| ) | |
| AUTOMOBILE MECHANICS' ) | Judge Virginia M. Kendall |
| UNION LOCAL NO. 701, IAMAW, ) | |
| AFL-CIO, ) | |
| ) | |
| *Defendant.* | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laborforce, LLC ("Laborforce") seeks to vacate an arbitration award (the "Award") issued by Arbitrator Steven M. Bierig (the "Arbitrator"). In Counts I through III, Laborforce alleges that the Arbitrator exceeded the scope of his authority. Defendant Automobile Mechanics' Union Local No. 701, IAMAW, AFL-CIO ("Local 701") moves to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's Motion to Dismiss is granted.

## BACKGROUND

The following factual allegations are taken from Laborforce's Complaint (Dkt. 1) and are assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Laborforce is a company which provides employees to truck dealerships in the Chicago area and Local 701 is a labor organization representing or acting for approximately 140 Laborforce employees. (Dkt. 1 ¶ 3–4). Laborforce and Local 701

1

are parties to a Collective Bargaining Agreement (the "CBA") which is effective February 3, 2019 until September 30, 2020. (Dkt. 1 ¶ 6). On August 6, 2018, Local 701 filed a grievance (the "Grievance") alleging that Joe Giordano, a non-bargaining unit employee, was permitted to perform bargaining unit employee work. (Dkt. 1 ¶ 7). The sole remedy Local 701 requested in the Grievance was that Giordano "cease and desist performing bargaining unit work." (Dkt. 1 ¶ 7). Laborforce assumed any obligations arising from the Grievance when it became party to the CBA on February 3, 2019. (Dkt. 1 ¶ 8).

On October 16, 2019, the Grievance was submitted to arbitration before Arbitrator Steven M. Bierig (the "Arbitrator"). (Dkt. 1 ¶ 2, 9). During the arbitration hearing, Local 701 asked that Laborforce "put Mr. Giordano into the bargaining unit from 31 days after he was employed, with back dues" and "pay all benefits to the Local 701 Health & Welfare Funds that require contributions under the CBA." (Dkt. 1 ¶ 30). On January 28, 2020, the Arbitrator issued the Award which is the subject of the Complaint. (Dkt. 1 ¶ 10). The Arbitrator found:

> [T]hat the Assistant Service Manager for the 2nd shift is effectively the same as the Foreman position and therefore, based on the language of the [CBA], must be in the Bargaining Unit. Therefore, I find that [Laborforce] violated the [CBA] when it improperly designated the 2nd shift Assistant Service Manager as a non-Bargaining Unit employee.

(Dkt. 1 ¶ 11).

Laborforce filed the present action to vacate the Award on February 19, 2020. (Dkt. 1). Laborforce alleges that the Arbitrator exceeded the scope of his authority by failing to rule that Giordano was a supervisor under 29 U.S.C. § 152(11) ("NLRA")

2

(Count I), by "basing his finding on the similarity of work" and disregarding the CBA's management rights clause (Count II), and by failing to find that Local 701 waived its claim to the remedy first raised during the arbitration hearing (Count III). Local 701 moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. (Dkt. 20).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson c. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Seventh Circuit interprets this plausibility standard to mean that the plaintiff must "give enough details about the subject-atter of the case to present a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the

3

reviewing court to draw on its judicial experience and common sense." *Schumacher*, 844 F.3d 676 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

## DISCUSSION

Courts are extremely reluctant to disturb an arbitral award and accord the arbitrator's decision extreme deference. *Ameren Ill. Co. v. Int'l Brotherhood of Electrical Workers*, 906 F.3d 612, 616–17 (7th Cir. 2018). An arbitral award is legitimate provided it "draws its essence from the collective bargaining agreement." *United States Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). The Courts are limited to evaluating whether the arbitrator "exceeded the scope of his submission," not whether the arbitrator made a factual or legal error. *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960); *see also Misco*, 484 U.S. at 36. This standard of review is rooted in a respect for the role of the arbitrator and a reluctance to transform arbitration into "just the first of a series of steps that always culminate[s] in court litigation." *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003); *see also Ameren*, 906 F.3d at 616–17.

### I. Count I: Failing to Consider the NLRA

Article 28, Section (g)[1] of the CBA limits the Arbitrator's authority such that he "shall not have the power to add to, ignore or modify any of the terms and conditions of [the CBA] . . ." (Dkt. 1-2 at 28–29). Laborforce contends that the

---

[1] The Complaint incorrectly cites this section as Article 29 of the CBA. *See, e.g.,* Dkt. 1 ¶ 17.

4

Arbitrator's failure to find whether Giordano was a supervisor under the NLRA violated Article 28, Section (g) of the CBA because he "could not have properly evaluated whether the [CBA] was violated when Laborforce classified Giordano as a non-bargaining unit employee." (Dkt. 1 ¶ 18).

Arbitrators have "no general authority to invoke public laws that conflict with the bargain between the parties." *Ameren*, 906 F.3d at 617 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974)). It is a bright-line rule that "[w]hen a contract . . . specifically limits an arbitrator's subject matter jurisdiction, the arbitrator should restrict his consideration to the contract, even if such a decision conflicts with . . . statutory law." *Ameren*, 906 F.3d at 618 (quoting *Roadmaster Corp. v. Prod. and Maint. Emp. Local 504, Laborers' Int'l Union of N. Am., AFL-CIO*, 815 F.2d 886, 889 (7th Cir. 1988) (internal quotation marks omitted)). When their subject matter jurisdiction is so limited, an arbitrator may only consider public laws which are specifically incorporated into the contract. *Ameren*, 906 F.3d at 618–19. Courts look to the language of the contract to determine if, and where, it incorporates public law. *See, e.g., id.* at 620 (finding the language "[a]ny provisions of this Agreement found by either party to be in conflict with State or Federal statutes . . ." sufficient permit an arbitrator to consider the Illinois Conceal Carry Act); *Butler*, 336 F.3d at 633–34 (determining that "in accordance with the provision of law" sufficient to permit an arbitrator to consider the Family and Medical Leave Act when interpreting a collective bargaining agreement).

5

Laborforce does not allege that the CBA incorporates the NLRA and cites no language to that effect. (Dkt. 1). Indeed, it is difficult to imagine how it could. None of the pertinent sections of the CBA include language suggesting it incorporates the NLRA specifically or public laws in general.[2] (Dkt. 1-2). Because Laborforce failed to plead sufficient facts to show that the CBA incorporated the NLRA such that the Arbitrator could properly consider it, Count I is dismissed under Rule 12(b)(6).

## II.  Count II: Failing to Consider the Management Rights Clause

In Count II, Laborforce alleges that, in "basing his finding on the similarity of work," the Arbitrator exceeded the scope of his authority by disregarding the terms of the management rights clause of the CBA which, in its view, permits a supervisor to perform bargaining work. (Dkt. 1 ¶ 21–26). This amounts to nothing more than Laborforce's view that the Arbitrator interpreted the CBA incorrectly. "A court's role in reviewing a labor arbitration award is 'very limited.'" *Ameren*, 906 F.3d at 616 (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960)). An arbitrator's interpretation which "draws its essence from the collective bargaining agreement" will stand even if it is an incorrect interpretation of the agreement.

---

[2] The CBA features incorporating language in a handful of sections, none of which are relevant here. Article 7, Section (d) ("Welfare") provides "[s]ubject to any applicable Federal Law, an employee must return and remain at work on full duty for thirty (30) work days to requalify for thirteen (13) weeks of Health & Welfare contributions for the same illness or injury." (Dkt. 1-2 at 11). Article 15 ("Individual Check-Off Authorization") states "in accordance with the applicable Federal and State Laws and individual check-off authorizations, the Company shall deduct from the first pay check of each month for each Employee who has properly executed an authorization form for check-off, Union initiation fees . . .". (Dkt. 1-2 at 21). Article 20, Section (g) ("Paid Absence Allowance") provides "[i]n accordance with the provisions of Section 42-5 of the Cook County Earned Sick Leave Ordinance . . .". (Dkt. 1-2 at 23). Finally, Article 31 ("Savings Clause") states "[i]n the event any Federal or State legislation or governmental regulations cause invalidation of any article or part hereof this agreement, it shall be renegotiated to conform to said State or Federal laws . . .". (Dkt. 1-2 at 29).

*Dexter Axel Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 418 F.3d 762, 770 (7th Cir. 2005) (quoting *Enterprise Wheel*, 363 U.S. at 597 (1960)); *see also Ethyl Corp. v. Local 7441, United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985)). Laborforce does not plead facts sufficient to show that the Award does not "draw its essence" from the CBA. Indeed, Laborforce tacitly acknowledges that the Award was grounded in the Arbitrator's interpretation of the CBA. (Dkt. 1 ¶ 24) ("[T]he Arbitrator found that the 'Assistant Service Manager position is sufficiently similar to that of a Bargaining Unit Foreman.'"); (Dkt. 1-1 at 18) (looking to Article 10 of the CBA). Laborforce's contention that the Arbitrator interpreted the CBA incorrectly is insufficient to state a claim.

In its response to Local 701's motion, Laborforce argues that the Arbitrator "improperly narrowed the scope of the management rights clause" both by incorporating language from the collective bargaining agreement from the Alsip location and by "applying his own opinion concerning the future of the bargaining unit." (Dkt. 26 at 5–6). It is unnecessary to reach the merits of whether these state a claim which survives a Rule 12(b)(6) challenge because they are wholly absent from the pleading itself. The Complaint contains no mention of either the Alsip collective bargaining agreement or the Arbitrator's concern regarding the effect of an alternate reading of the management rights clause. Laborforce's late-discovered arguments do not salvage the underlying pleading; Count II is dismissed for failure to state a claim under Rule 12(b)(6).

**III.     Count III: Failing to Find Local 701 Waived Remedy**

Laborforce maintains that the Arbitrator exceeded his authority by failing to find that Local 701, in asking for a remedy at the arbitration hearing which differed from the one requested in the Grievance, waived its claim to the former. (Dkt. 1 ¶ 34). This is a two-part argument. First, that under the CBA, any remedy not requested in the Grievance is waived. Second, that the Arbitrator was required to make a finding as to the appropriateness of the remedy requested.

Laborforce sufficiently alleged in its Complaint that the remedy Local 701 requested at the October 16, 2019, arbitration hearing differed from that requested in the Grievance. The Grievance requested that Giordano "cease and desist performing bargaining unit work." (Dkt. 1 ¶ 7; Dkt. 1-3 at 2). At the October 16, 2019, arbitration hearing, Local 701 requested that Laborforce "put Mr. Giordano into the bargaining unit from 31 days after he was employed, with back dues" and "pay all benefits to the Local 701 Health & Welfare Funds that require contributions under the CBA." (Dkt. 1 ¶ 30). Alone, these factual allegations are insufficient to maintain a claim. In the absence of guidance from the contract, arbitrators are afforded "wide latitude in fashioning an appropriate remedy." *Chameleon Dental Prods., Inc. v. Jackson*, 925 F.2d 223, 225 (7th Cir. 1991); *see also Dexter*, 418 F.3d at 768; *Mogge v. Dist. 8 Int'l Ass'n of Machinists, AFL-CIO*, 454 F.2d 510 (7th Cir. 1971). Laborforce pleads no facts suggesting that the CBA restricts arbitral remedies to those requested in the Grievance.

Laborforce's appeal to Article 28(b)(1) of the CBA in its response to Local 701's motion is a misreading of the text. (Dkt. 26 at 10–11). Article 28(b)(1) states that *issues*—not remedies—which may form the basis of a grievance must be presented within seven calendar days of the date of the occurrence upon which the issue is based. (Dkt. 1-2 at 26). Moreover, even were Laborforce's interpretation of Article 28(b)(1) correct, its bare observation in the Complaint that "Article [28]—Grievances and Arbitration, governs the process where any differences may arise between the parties concerning the application of the terms of the Contract" is insufficient "factual content" to infer that the CBA limits arbitral remedies. (Dkt. 1 ¶ 29).

Neither does Laborforce plead facts to suggest that the Arbitrator was required to rule on whether Local 701 waived its claim to the remedy requested at the arbitration hearing. The CBA is similarly silent as to this procedural question. (Dkt. 1-2). Absent guidance to the contrary from the CBA, the Arbitrator's decision not to rule on Laborforce's waiver argument cannot form the basis to vacate the Award. *See Misco*, 484 U.S. at 40 ("[W]hen the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator."); *see also Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454, 456 (7th Cir. 2015).

Because Laborforce failed to plead sufficient facts to show that the CBA either limited arbitral remedies or required a decision on its waiver argument, Count III is dismissed under Rule 12(b)(6).

9

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss (Dkt. 19) is granted and Plaintiff's Complaint is dismissed without prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: September 29, 2020